UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **JAMIE TERRELL,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No.: 6:19-CV-00053 |
| **NATIONAL CREDIT ADJUSTERS,** | § § § | |
| Defendant. | § § § | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff JAMIE TERRELL (hereinafter "Terrell" or "Plaintiff") files this first amended complaint ("Complaint") against Defendant NATIONAL CREDIT ADJUSTERS (hereinafter "National Credit" or "Defendant"), and, in support thereof, states as follows:

## INTRODUCTION

1. This Complaint alleges violation of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Texas Debt Collection Practices Act, Tex. Fin. Code § 392.001 *et seq.* ("TDCA"); and the Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*

2. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Congress has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

3. Congress wrote the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

4. TERRELL, by his attorneys, brings this Complaint to challenge the illegal actions of NATIONAL CREDIT with regard to attempts by Defendant, a debt collector, to unlawfully and abusively collect another's debt knowingly from Plaintiff by making harassing, threatening, and abusive telephone calls to Plaintiff, which violates Plaintiff's rights under the FDCPA.

5. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, all the conduct engaged in by NATIONAL CREDIT took place in the State of Texas.

8. Any violation by NATIONAL CREDIT was done knowingly, willfully, and intentionally, and Plaintiff alleges that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of NATIONAL CREDIT's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, insurers, and any other party acting on its behalf.

## JURISDICTION & VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of a federal consumer protection statute.

11. Specifically, this action arises out of each of NATIONAL CREDIT's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

12. Jurisdiction for related state law claims is proper pursuant to 28 U.S.C. § 1361, as the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

13. Because NATIONAL CREDIT conducts business within the State of Texas, personal jurisdiction is established.

14. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Victoria, State of Texas which is within this Judicial District; (ii) the conduct complained of herein occurred within this Judicial District; and, (iii) Defendant conducted business within this Judicial District at all times relevant.

15. Plaintiff is informed and believes and thereon alleges that all acts of others acting on Defendant's behalf as hereinafter alleged were authorized or ratified by an officer, director or managing agent of Defendant.

16. Plaintiff is informed and believes, and on that basis, alleges that at all times mentioned herein Defendant was the principal, agent (actual or ostensible) or employee and in acting as such principal, agent, or employee, took some part in the acts and omissions hereinafter set forth, and Defendant is thus liable to Plaintiff for the relief prayed for herein.

## PARTIES

17. Plaintiff TERRELL is a natural person who resides in the County of Victoria, State of Texas, and is the party from whom Defendant sought to collect another's consumer debt.

18. At all times relevant, Plaintiff TERRELL was an individual residing within the State of Texas in the County of Victoria.

19. In addition, Plaintiff is a "consumer" allegedly obligated to pay a "debt" as those terms are defined under 15 U.S.C. § 1692a(3),(5).

20. Defendant NATIONAL CREDIT is a debt recovery servicer headquartered in Hutchinson, Kansas, and doing business in the state of Texas.

21. Plaintiff is informed and believes, and thereon alleges, that Defendant is a person who uses an instrumentality of interstate commerce or the mail in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a "debt collector" as that phrase is defined by 15 U.S.C. § 1692a(6).

22. This action arises out of an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment, the obligation thus constituting a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

## FACTUAL ALLEGATIONS

23. In or around approximately 2016, Plaintiff TERRELL's ex-spouse Johnny Rangel (the "Debtor") allegedly opened a payday loan with an entity known as The Cash Store for approximately $592.64 (the "Account").

24. Neither TERREL's cell phone number, or any of her personal information was ever placed on any application for the Account.

25. At some point, the account allegedly became delinquent.

26. In or around March 2, 2016 or at some point thereafter, the Account was then subsequently placed for collections with NATIONAL CREDIT.

27. NATIONAL CREDIT purchases and services delinquent debts from The Cash Store.

28. Since July 2016, NATIONAL CREDIT has made several attempts to contact the Debtor of the Account to no avail.

29. After several unsuccessful attempts to collect from the Debtor, NATIONAL CREDIT employed and/or used the services of a third-party collection agency ("Caller") to pursue a more aggressive debt collection strategy of calling any person related to or connected to the Debtor on Account.

30. The Caller used various aliases and pseudonyms in its line of business in collecting debts for other debt collectors, such as NATIONAL CREDIT.

31. The Caller failed to disclose its identity in calling the Debtor's relations or family members linked to the Account.

32. NATIONAL CREDIT supplied the Account to the Caller to make aggressive collection calls to parties linked to the Account.

33. Either NATIONAL CREDIT and/or the Caller used skip tracing tools, like Accurint or CBC, to acquire every possible phone number attached to the Debtor and his employer and family and acquire every piece of information about the Debtor's assets.

34. On information and belief, NATIONAL CREDIT or the Caller used the skip tracing tools to acquire TERRELL's cell phone number, her social security information, and her date of birth.

35. Sometime in and around November 2018, NATIONAL CREDIT or the Caller began placing calls to TERRELL's cell phone.

36. NATIONAL CREDIT or the Caller left voicemails on TERREL's cell phone.

37. The voicemails stated that the calls were from a Jessica Anderson and were for Johnny Rangel.

38. The voicemails disclosed on that the calls were from legal services, regarding a grievance, filed in Victoria county court, and to contact a mediator.

39. The statements made by the Caller created the impression that a lawsuit was filed in court and a judgment was being pursued on the Account.

40. TERRELL finally called the number back left on her voicemail by the Caller.

41. She reached the Caller, who claimed to be a representative of First National Bank.

42. First National Bank was among the many aliases used by the Caller in its line of business.

43. The Caller did not work for First National Bank, but worked for or was acting on behalf of NATIONAL CREDIT.

44. The Caller failed to disclose its true identity and that it worked for or was calling on behalf of NATIONAL CREDIT.

45. The Caller stated to TERRELL that the calls were regarding a debt, for about $800.00, opened under her name, and under her social security number.

46. The Caller stated to TERRELL that her ex-spouse had opened a loan with a company called The Cash Store.

47. The Caller also stated to TERRELL that her ex-spouse had applied for the loan in or around March 2016.

48. The Caller had TERRELL's personal information, including the last four digits of her social security number.

49. The Caller stated to Plaintiff that the Debtor had put her social security number and personal information on the loan application, which was false.

50. Based on the statements made by the Caller, Plaintiff grew concerned that her identify may have been stolen by the Debtor. She became alarmed.

51. The Caller also stated that the Debtor had placed his truck as a collateral for the loan.

52. This statement that the Debtor had placed his truck as collateral for the loan made no sense to TERRELL, as the truck was purchased in 2018, and so could not have been placed as collateral for any loan in 2016 prior to the truck being purchased. Plaintiff's concern only grew.

53. Plaintiff contacted The Cash Store.

54. The Cash Store verified to Plaintiff that the Account was opened only under the Debtor's social security number.

55. The Cash Store verified to TERRELL that the Account was not opened under TERRELL's social security number.

56. The Cash Store also verified to Plaintiff that her name or information was not on any of the loan documents signed in originating the Account.

57. Each statement by made the Caller to collect the debt was thus false.

58. After confirming her personal information was not placed on the application for the Account, Plaintiff was alarmed at the thought that the Caller, an unknown party, was in possession of her personal information.

59. After Plaintiff confirmed with The Cash Store that the Account was not opened using her information, Plaintiff called the Caller back to convey the information she verified.

60. TERRELL told the Caller the results of her investigation: that the Account was not opened under her name; that her personal information, such as her name, social security number, and date of birth, was not given in any form on the application for the Account; and this confirmed

she did not owe the debt on the Account.

61. When TERRELL called the Caller back to let them know that they had made false statements to her and that she confirmed that she did not owe the debt, she was transferred to another department represented to TERRELL by the Caller as a law office, to speak to an agent represented to TERRELL by the Caller to be an attorney.

62. Once she conveyed the information to the alleged attorney, he became hostile with TERRELL, used profanity, and told her he would call and harass her as much as desired.

63. The alleged attorney demanded $800.00 in payment from Plaintiff, despite TERRELL's communication to the Caller about the results of her investigation that the Account did not belong to her in any form whatsoever.

64. The agent also knew that TERRELL did not owe the debt on the Account because none of the Account documents, such as the loan application, contained her name.

65. Plaintiff repeatedly told the Caller that the debt did not belong to her, and she should not have to make payments on a debt that did not belong to her.

66. The alleged attorney again threatened Plaintiff with a lawsuit, threatened that they would call her every day, and employed profanity during the telephone communications.

67. At this point, TERRELL became very upset and felt insulted and targeted. She felt that, despite the fact that she did not own this Account and was not the Debtor, she was being targeted for collection activity, and could even possibly be subjected to a lawsuit, among other feared actions that could possibly be taken by the Caller.

68. The Caller also claimed that Plaintiff contacted the wrong bank and that the Account could have been with another institution, information the Caller knew to be false when made.

69. At this point not only did Plaintiff become suspicious, but Plaintiff again felt threatened, harassed, and abused.

70. At this point, Plaintiff became angry, scared, and anxious.

71. The Caller continued to insist that TERRELL was liable for the balance on the Account and threatened her with a legal action.

72. Subsequently, in an effort to further investigate the alleged Account and the debt collector that contacted her, Plaintiff discovered that The Cash Store had sold and/or assigned the debt to Defendant NATIONAL CREDIT for collection purposes.

73. Plaintiff believes that NATIONAL CREDIT and/or its agent and/or employed the Caller to make the calls to Plaintiff, to evade accountability and liability for the illegal calls.

74. The Caller used various aliases and spoofed phone numbers to also conceal its true identity.

75. Plaintiff believes that NATIONAL CREDIT knows the true identity of the Caller and possesses a record of the alias used by the Caller, along with other information about the agent.

76. In to attempt to collect a another's debt from a TERRELL, the Caller harassed and threatened Plaintiff, with false, deceptive, and misleading misrepresentations, specifically but not limited to representations about an outstanding lawsuit against her and that her name was on the Account. The Caller also failed to disclose its true identify so it could remain undetected and unaccountable for its actions that violate the FDCPA.

77. As the Caller was acting on behalf of NATIONAL CREDIT, NATIONAL CREDIT is liable for the actions committed by the Caller acting on its behalf.

78. Plaintiff is informed and believes and here upon alleges, that the unwanted calls were made by NATIONAL CREDIT and/or NATIONAL CREDIT agent(s), with NATIONAL CREDIT permission, knowledge, and control, and for NATIONAL CREDIT's benefit.

79. As the Caller and its agents were acting on behalf of NATIONAL CREDIT, NATIONAL CREDIT is liable for the actions committed by the Caller acting on its behalf.

## CAUSE OF ACTION AGAINST DEFENDANT

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 Et Seq.

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

82. Specifically, through their conduct, the Caller and NATIONAL CREDIT violated 15 U.S.C. § 1692b by, among other grounds, contacting TERRELL and failing to provide identifying information, falsely stating TERRELL owes the debt on the Account, and communicating with TERRELL several times on the Account.

83. Through their conduct, the Caller and NATIONAL CREDIT violated 15 U.S.C. § 1692d by, among other grounds, engaging in the conduct of threatening legal action and repeated harassing calls, the natural consequence of which was to harass, oppress, and abuse Plaintiff in connection with the collection of the debt on the Account.

84. Through their conduct, the Caller and NATIONAL CREDIT violated 15 U.S.C. § 1692e by, among other grounds, falsely representing the character, amount, and legal status of the debt in connection with the collection of a debt.

85. Through their conduct, the Caller and NATIONAL CREDIT violated 15 U.S.C. § 1692e by using false representations and deceptive means to collect a debt on an account that did not and does not belong to Plaintiff.

86. Through their conduct, the Caller and NATIONAL CREDIT violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect a debt that did not and does not belong to Plaintiff, which was known by the Caller and NATIONAL CREDIT.

87. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## VIOLATION OF THE DCPA
### Tex. Fin. Code § 392.001 Et. Seq.

88. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

89. The foregoing acts and omissions constitute numerous and multiple violations of the DCPA as well, including but not limited to NATIONAL CREDIT and the Caller's use of an alias in

the collection of a debt and failure to disclose its true identity.

90. As a direct and proximate result of the willful actions of the Caller and NATIONAL CREDIT, TERRELL has suffered actual damages.

91. A violation of the DCPA is also a violation of the DTPA entitling Plaintiff to tremble damages for any recovery under the DCPA.

92. Plaintiff is entitled to actual/economic damages, emotional and/or mental anguish damages, exemplary/punitive damages, including treble damages, and attorney's fees and costs. Plaintiff seeks reasonable and necessary attorney's fees in this case through and to the time judgment is entered and for any post-trial or post-judgment appeals, to be detailed through a statement of services submitted at the appropriate time.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

- An award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1) and Tex. Fin. Code § 392.403(a)(2) against Defendants;
- An award of statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A), against Defendant;
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Tex. Fin. Code § 392.403(b);
- Any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

93. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 10, 2020

**KAZEROUNI LAW GROUP, APC**

By: /s/ Ramona Ladwig
Ramona V. Ladwig, Esq.
**KAZEROUNI LAW GROUP, APC**
1910 Pacific Ave, Suite 14155
Dallas, TX 75201
Office: (214) 880-6362
Fax: (800) 635-6425
ramona@kazlg.com

*Attorneys for Plaintiff*